# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| VIAVIEW, INC., ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:12-cv-01657-GMN-GWF |
| vs. ) | |
| ) | **ORDER** |
| BLUE MIST MEDIA; ERIC S. CHANSON; ) | |
| KEVIN C. BOLLAERT; CODY ALVIAR; ) | |
| ROY E. CHANSON; and AMY L. ) | |
| CHANSON, ) | |
| ) | |
| Defendants. | |

Pending before the Court is the *Ex Parte* Motion for Temporary Restraining Order and Motion for Preliminary Injunction (ECF No. 6) filed by Plaintiff ViaView, Inc. ("Plaintiff").

## I. BACKGROUND

This case arises from Plaintiff's ownership of the <isanyoneup.com> domain name and all associated trademark rights and goodwill and Defendants' use of the term "ISANYONEUP" in various website domain names. (*See* McGibney Decl. ¶ 3, ECF No. 6-1; Mot. for Ex Parte TRO Ex. 4-7, ECF Nos. 6-6, 6-7, 6-8, 6-9.)  Specifically, Defendants operate a network of websites, including <isanyoneup.net>, <isanyoneupnudes.com>, and <isanyoneupvideos.com> (collectively, the "Infringing Domain Names"), where they publish "involuntary pornography." (Mot. for Ex Parte TRO at 3:21-23, Ex. 4-7, ECF Nos. 6-6, 6-7, 6-8, 6-9; Mot. for Ex Parte TRO.)

Plaintiff purchased the ISANYONEUP mark in April of 2012 and associates the mark with its campaign to stop "bullying behavior." Defendant, on the other hand, is attempting to use this mark to direct consumers to its websites that display various pornographic images.[1]

In response to Defendants' actions, on September 19, 2012, Plaintiff filed its complaint asserting seven causes of action: (1) Cybersquatting in violation of 15 U.S.C. § 1125(d); (2) Trademark Infringement under 15 U.S.C. § 1125(a); (3) Unfair Competition under 15 U.S.C. § 1125(a); (4) Common Law Trademark Infringement; (5) Breach of Contract; (6) Civil Conspiracy; and (7) Intentional Interference with Contractual Relations. (Compl. ¶¶ 51-92, ECF No. 1.) Due to its concern that Defendants are attempting to relocate themselves and the Infringing Domain Names to a location beyond the jurisdictional reach of this Court, Plaintiff filed this *Ex Parte* Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). However, "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471

---

[1] Currently, Defendants' domains redirect to its non-infringing web site <yougotposted.com>.

(1973)). Thus, "[t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Id.*

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F.Supp. 2d 1111, 1126 (E.D. Cal. 2001). Specifically, a preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. Above all, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

### III.  DISCUSSION

For the reasons discussed below, the Court concludes that Plaintiff has carried its burden by establishing each of the four requirements discussed below. Accordingly, the Court finds that Plaintiff is entitled to an *ex parte* temporary restraining order directing the domain name registrar to transfer and place the Infringing Domain Names on hold pending trial.

####   A.    Likelihood of Success on the Merits

Before Plaintiff is entitled to a TRO, it must first establish that it will likely succeed on the merits of a claim that would entitle the plaintiff to the equitable remedy of a TRO. *See Winter*, 555 U.S. at 20. Plaintiff's complaint alleges seven claims for relief. (Compl., ECF No. 1.) Because the Court finds that Plaintiff has carried its burden on its claim under the Anti-

Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), the Court need not address whether Plaintiff is likely to succeed on the merits of its remaining six claims.

The Ninth Circuit recognizes that "cybersquatting occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (citing *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004). The ACPA provides that an owner of a mark may hold a person civilly liable, if that person:

> (i) has a bad faith intent to profit from that mark . . . ; and
> (ii) registers, traffics in, or uses a domain name that –
> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, *is identical or confusingly similar to that mark*;
> > (II) in the case of a famous mark that is famous at the time of registration of the domain name, *is identical or confusingly similar to or dilutive of that mark* . . ..

15 U.S.C. § 1125(d)(1)(A) (emphasis added). Thus, to establish its cybersquatting claim, Plaintiff will have to show that (1) it owns a trademark; (2) that trademark is "distinctive [or famous] at the time of registration of the domain name; (3) Defendants "registered, trafficked in, or used a domain name" that is "identical or confusingly similar" to Plaintiff's mark, and (4) Defendants had a bad faith intent to profit from Plaintiff's mark. 15 U.S.C. § 1125(d)(1)(A).

    *1.    Plaintiff's ownership of the ISANYONEUP mark.*

Plaintiff purchased the <isanyoneup.com> domain name and all associated trademark rights and goodwill in April of 2012. Thus, Plaintiff can likely establish its common law ownership of the *ISANYONEUP* mark, thereby establishing this element of the cybersquatting claim.

        2.     *Plaintiff's trademark was distinctive or famous at the time Defendants registered their domain names.*

Trademarks are generally classified as either (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 (1992). Suggestive, arbitrary, and fanciful marks are all "deemed inherently distinctive and are entitled to protection" because "their intrinsic nature serves to identify a particular source of a product." *Id.* Arbitrary marks are those marks that do not suggest the goods and services offered. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993) ("An arbitrary mark consists of common words arranged in an arbitrary way that is non-descriptive of any quality of the goods or services"); *Interstellar Starship Servs., Ltd v. Epix, Inc.*, 304 F.3d 936 n.6 (9th Cir. 2002) ("'arbitrary' trademarks are common words used in uncommon or unexpected ways"). Suggestive marks require "imagination, thought, or perception to link the trademark with the goods." *Interstellar Starship*, 304 F.3d at n.6.

In this case, Plaintiff can likely establish that its ISANYONEUP mark is either arbitrary or suggestive because the words in the mark requires at least "imagination, thought, or perception to link the trademark with the goods." Thus, Plaintiff can likely show that its mark is inherently distinctive, which satisfies this element of the cybersquatting claim.

        3.     *Defendants registered and used a domain name that is "identical or confusingly similar" to Plaintiff's mark.*

Here, it can hardly be disputed that Defendants' domain names are "identical or confusingly similar" to Plaintiff's mark. Specifically, each of the allegedly infringing domain names contains the entirety of Plaintiff's ISANYONEUP mark. Defendants failed to include any indication that the allegedly infringing domain names originate from anyone other than Plaintiff. Accordingly, Plaintiff has established a likelihood that it will succeed in establishing that the Defendants registered and used a domain name that is "identical or confusingly similar" to Plaintiff's ISANYONEUP mark.

*4.     Defendants' bad faith intent to profit from Plaintiff's mark.*

The ACPA includes a non-exhaustive list of nine factors that a court may consider when determining whether a given defendant has acted with the requisite bad faith:

> **(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;
> **(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> **(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> **(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> **(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> **(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> **(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> **(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> **(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B).

The Court agrees with Plaintiff that most, if not all, of these factors supports a finding that, at the very least, Plaintiff will likely succeed in establishing that Defendants acted with the requisite bad faith.  Specifically, Defendants use the allegedly infringing domain names to direct consumers to its <yougotposted.com> website.  Thus, Defendants have the apparent

intent to divert consumers from Plaintiff's website with the result of creating confusion among consumers as to the source, sponsorship, affiliation, or endorsement of Defendants' website. Additionally, the entire mark is incorporated in each of the Defendants' allegedly infringing domain names. These factors in particular weigh heavily in favor of finding a high likelihood that Plaintiff will establish the requisite bad faith.

### B.     Likelihood of Irreparable Harm in the Absence of Preliminary Relief

Once a plaintiff in a trademark action has established that it is likely to succeed on the merits, irreparable injury is generally presumed. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). Because the Court finds a high likelihood that Plaintiff will succeed on the merits, the Court also finds that Plaintiff has carried its burden in establishing that it will likely suffer irreparable harm in the absence of preliminary relief.

### C.     The Balance of Equities Tips in Plaintiff's Favor

The balancing aspect of the TRO analysis requires courts to weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). In this case, Defendants will suffer only minimal harm as a result of the TRO. Specifically, Defendants are using their allegedly infringing domain names to direct further traffic to its <yougotposted.com> website. It appears that none of Defendants' content will actually be inaccessible. On the other hand, if the TRO were not issued, Plaintiff would suffer significant injury. Without the TRO, Defendants could travel to a location beyond the jurisdictional reach of this Court in order to continue its allegedly infringing activities. Accordingly, Defendants could continue to tarnish Plaintiff's name and brand.

Finally, consistent with the underlying purpose of TROs, issuance of this TRO will maintain the status quo. "[T]he status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir.

1963). Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name . . . , a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." By returning the allegedly infringing domain names to the Registrar, this injunctive relief will return the parties to the respective positions that they held before Defendants began using the allegedly infringing domains.

### D. The issuance of a TRO benefits the public's interest.

The primary goal of trademark law is "to protect consumers against deceptive designations of . . . origin . . . ." *Int'l Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 918 (9th Cir. 1980). Plaintiff purchased the ISANYONEUP mark and associates the mark with its campaign to stop "bullying behavior." Defendant, on the other hand, is attempting to use this mark to direct consumers to its websites that display various pornographic images. Thus, when consumers attempt to reach Plaintiff's website, some consumers may inadvertently be subjected to adult content due to the confusing similarity between Plaintiff's mark and Defendants' domain names. Accordingly, the Court finds that Plaintiff has carried its burden in establishing that the public will benefit from the issuance of a TRO.

## IV. NOTICE VIA EMAIL

As discussed above, Plaintiff's counsel has adequately explained why a TRO should issue without notice. Additionally, Plaintiff's counsel asserts in this motion that he has made multiple efforts to give Defendants notice. (Mot. for *Ex Parte* TRO 21:3-18, ECF No. 6.) Despite its efforts to give notice, Defendants have stopped responding to Plaintiff's communications. (*Id.* at 21.) Furthermore, Plaintiffs have adequately demonstrated that Defendants are aware of the instant action, as evidenced by the chat conversations between Defendants Eric Chanson and Cody Alviar. (*See* Mot. for *Ex Parte* TRO Ex. 1 at 16, ECF No. 6-3.) Accordingly, to facilitate a just, speedy, and efficient determination of Plaintiff's request

for a preliminary injunction, the Court grants the requested leave to serve the complaint and notice of the TRO by email.

### V. CONCLUSION

**IT IS HEREBY ORDERED** that the *Ex Parte* Motion for Temporary Restraining Order (ECF No. 6) filed by Plaintiff ViaView, Inc. is **GRANTED**.  Defendants, including without limitation, all of its respective partners, officers, agents, servants, employees, and all other persons acting in concert or participation with Defendant, are temporarily enjoined and restrained from (A) registering or trafficking in any domain name containing the ISANYONEUP mark or any confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs; (B) operating or maintaining any website that includes the ISANYONEUP mark in the domain, or any confusingly similar variations thereof, alone or in combination with any letters, words, phrases or designs; and (C) using the ISANYONEUP mark or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs in commerce (including, but not limited to, on any website or within any hidden text or metatags within any website). Defendant shall immediately cease and desist any and all use of Plaintiff's marks and any and all variants thereof, including use of the Infringing Domain Names, and take all necessary actions to transfer the Infringing Domain Name to Plaintiff ViaView, Inc.

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 1125(d)(1)(C), the domain names <isanyoneup.net>, <isanyoneupnudes.com>, and <isanyoneupvideos.com> shall be immediately locked by the Registrar and/or its successor registrars and transferred to Plaintiff ViaView, Inc.

**IT IS FURTHER ORDERED** that Plaintiff ViaView, Inc. shall post a nominal bond of one hundred dollars ($100) for each domain name at issue because the evidence indicates that

1  Defendant will suffer only minimal, if any, damage by the issuance of this temporary
2  restraining order.
3      **IT IS FURTHER ORDERED** that Defendants shall have until **December 7, 2012,** to
4  file their Response Brief.  Thereafter, Plaintiff shall have until **December 21, 2012**, to file its
5  Reply Brief.  The matter shall be set for hearing on Plaintiff's Motion for Preliminary
6  Injunction on  Jan. 2, 2013  , at  2:30 pm.
7      **DATED** this 30th day of November, 2012.

_____
Gloria M. Navarro
United States District Judge